UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 1:16-cv-00276-FDW

| | |
|---|---|
| JOAN MOORE MILLSAPS, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 11). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits under 42 U.S.C. § 405(g) (2012). For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the Commissioner's ruling is AFFIRMED.

**I. Background**

The procedural history is not in dispute. Plaintiff applied for disability insurance benefits on June 28, 2012 (Tr. 19). Plaintiff alleges that her disability onset date was June 30, 2010 (Tr. 19). Plaintiff's application was denied initially and upon reconsideration (Tr. 115, 130). After Plaintiff's timely request, a hearing was held on October 15, 2014 (Tr. 19-32). After the hearing, the Administrative Law Judge (ALJ) affirmed the Commissioner's denial of benefits (Tr. 19-32). The Appeals Council then denied Plaintiff's request for a review of the matter (Tr. 1-6). Finally,

1

after the final decision of the Commissioner, Plaintiff appeals to this Court for relief.

Plaintiff filed the present action seeking judicial review under 42 U.S.C. § 405(g) on August 12, 2016. Plaintiff contends that the ALJ's reliance on VE testimony was improper because the ALJ did not perform a function-by-function analysis of Plaintiff's limitations (Doc. 10, p. 7). Although not listed as specific objections, Plaintiff also briefly mentions at the end of her brief, the ALJ's alleged failure to properly address difficulties in concentration, persistence, or pace; improper evaluation Vocational Expert (VE) testimony; and improper evaluation of objective medical evidence (Id. at 7, 10-12).

## II.     Standard of Review

Under the Social Security Act, there is a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(1). Step one is to determine whether the claimant is engaged in substantial gainful activity; if claimant is engaged in substantial gainful activity, he will be found not disabled. Id. § 404.1520(a)(4)(i). Step two is to determine whether the claimant has a severe medically determinable physical or mental impairment or a combination of impairments that is severe and meets the duration requirement. Id. § 404.1520(a)(4)(ii). At step three, if the claimant's impairment or combination of impairments meets or medically equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant will be found disabled. Id. § 404.1520(a)(4)(iii). Step four is to determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work. Id. § 404.1520(a)(4)(iv). Lastly, step five is to consider whether the claimant is able to make an adjustment to other work, considering claimant's RFC, age, education, and work experience. Id. § 404.1520(a)(4)(v).

This Court's review of a final decision by the Commissioner is authorized pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This Court's review is limited to: 1) whether substantial evidence supports the Commissioner's decision, and 2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence, make credibility determinations, or substitute its own judgment for that of the Commissioner. 20 C.F.R. § 416.927(c)(2). Even if the reviewing court would have come to a different conclusion, it must uphold the Commissioner's decision if the decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). The substantial evidence standard is met if a reasonable mind can use the amount of evidence to support a conclusion. Hays, 907 F.2d at 1456. The substantial evidence level rests somewhere above a mere scintilla of evidence, but may be lower than a preponderance of the evidence. Id.

### III. Analysis

Plaintiff raises the following issues for this Court: 1) whether the ALJ's evaluation of VE testimony was improper when the ALJ failed to perform a function-by-function analysis of Plaintiff's impairments, including limitations in concentration, persistence, or pace; 2) whether the ALJ improperly evaluated on the VE's testimony; and 3) whether the ALJ appropriately evaluated the medical evidence. The following discussion will explain why the Court disagrees with Plaintiff's arguments.

1. Function-by-Function Analysis

Plaintiff contends the ALJ erred by failing to conduct a function-by-function analysis for her alleged mental limitations in calculating Plaintiff's RFC (Doc. No. 10, p. 7, 10-11). At step

3

four of disability determination, the ALJ assesses the claimant's RFC, or what a claimant can still do, factoring in "all of [the claimant's] medically determinable impairments of which [the ALJ] is aware." 20 C.F.R. § 416.945(a)(2). Prior to making an RFC determination, the ALJ is required to identify functional limitations and restrictions that result from an individual's medically determinable abilities and assess the individual's abilities on a function-by-function basis. SSR 96-8p.

While the Fourth Circuit in Mascio v. Colvin remanded the case because the ALJ did not conduct a function-by-function analysis of the plaintiff's moderate mental limitations, the Court explicitly rejected a *per se* rule requiring remand in the absence of a function-by-function analysis. 780 F.3d 632, 636 (4th Cir. 2015). Instead, the Court stated that a function-by-function analysis is not necessary if remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested. Id. (internal citations omitted). The court further stated that, if "an ALJ [] find[s] the concentration, persistence, or pace limitation does not affect [a claimant's] ability to work, it would be appropriate to exclude it from the hypothetical tendered to the vocational expert." Id. at 638.

Here, Plaintiff argues that the ALJ erred by not performing a function-by-function analysis prior to determining her RFC. However, Plaintiff does not provide any examples of limitations the ALJ should have addressed. Without information on which analysis is missing, this Court is unable to determine whether the ALJ's opinion is "sorely lacking" as discussed in Mascio.

In her decision, the ALJ discussed both physical and mental limitations considered in determining Plaintiff's RFC. For example, in regards to physical limitations, the ALJ pointed out that the evidence supported Dr. Stephen Burgess' opinion that work-related activities such as

4

bending, stooping, lifting walking, crawling, squatting, carrying, traveling, and pushing and pulling heavy objects were mildly impaired (Tr. 27). Likewise, the ALJ pointed to the opinions of select state agency medical consultants who suggested the inclusion of postural limitations (Tr. 30). The ALJ then adopted these limitations in the RFC determination. In addition, the ALJ stated that Plaintiff's complaints as to her limitations are not supported by medical evidence, testing, or lab results (Tr. 30). After a visit on April 18, 2013, Dr. Thomas Clayton, Plaintiff's treating physician, stated that Plaintiff's pain medication "allowed her to do her activities of daily living on a regular basis." (Tr. 27). Then again, on May 28, 2013, Dr. Clayton said Plaintiff would benefit from only minimal assistance for pain (Tr. 28). Otherwise, Dr. Clayton reported that other examinations were all normal (Id.).

In regards to mental limitations, the ALJ refers to Dr. Todd Morton's opinion that Plaintiff has the ability to understand, retain and carry out simple work instructions (Tr. 26). Similarly, the ALJ referred to the opinion of Stephanie Debruhl, LCSW, from Appalachian Community Services, who opined that Plaintiff did not have perceptual disturbances, her stream of thought was in normal range, and attention and concentration were normal (Tr. 29). Further, the ALJ pointed out that the evidence did not provide any basis for an argument that Plaintiff's depression and anxiety would in any way limit his performance in basic work activity (Tr. 30).

In accordance with Mascio, the ALJ addressed the physical issues that would affect Plaintiff's work ability in the RFC determination. However, where there was no evidence that Plaintiff's mental limitations would affect her ability to work, there was no need for a function-by-function analysis of such.

Plaintiff does not provide any argument as to which function the ALJ insufficiently

discussed. As such, this Court agrees with Defendant that without any direction as to where the ALJ failed in her analysis, it is impossible to determine whether the ALJ erred by not providing a function-by-function analysis.

2. Improper evaluation of Vocational Expert testimony

Plaintiff argues that the ALJ's evaluation of the VE's testimony improperly relied on the Grids, the commonly used name for the Medical-Vocational Guidelines, to find Plaintiff not disabled. This Court disagrees.

At step four of the disability determination, the ALJ assesses the claimant's RFC, or what a claimant can still do, factoring in "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware." 20 C.F.R. § 416.945(a)(2). At step five, the ALJ may rely on the expertise of a vocational expert to determine whether a claimant can perform work that exists in significant numbers in the national economy, given that claimant's work-related limitations. 20 C.F.R. §§ 404.1520(g), 404.1566(e). The vocational expert's opinion "must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted).

Here, the ALJ appropriately presented a hypothetical question to the VE because the question included all relevant information the ALJ was able to determine from the evidence. After hearing all testimony, and receiving the evidence, the ALJ determined Plaintiff's RFC to be as follows:

> [C]laimant has the residual functional capacity to perform light work . . . except the claimant is able to lift, push, and pull 10 pounds frequently, 20 pounds occasionally. The claimant is able to stand, sit, and walk for six hours each, for a total of eight hours. The claimant must have normal breaks and change positions. She is unable to climb ladders. The claimant is able to climb regular steps frequently, stoop occasionally, and kneel and crouch frequently. The claimant is able to perform

unskilled work. She is able to have frequent interaction with the public and coworkers.

(Tr. 23). The above RFC determination was made by considering all of Plaintiff's limitations that were medically determined as has been discussed above.

The ALJ then turned to VE testimony, rather than relying on the grids, because Plaintiff's ability to work the full range of light work was limited (Tr. 31-32). This is contrary to Plaintiff's argument that the ALJ made her decision by "application of the grids." (Doc. 10, p. 9). The ALJ's decision to rely on VE testimony, rather than the grids, was appropriate where Plaintiff was found to have both exertional and nonexertional limitations. 20 CFR 404.1569(d). In addition, Plaintiff's argument concerning the "erosion" to the occupational base is also incorrect.

In response to the ALJ's question, the VE determined that there existed a significant number of jobs in the market for a person who met the given criteria. However, the VE clarified to the ALJ that while most of the information given was consistent with the DOT, the "sit/stand option" is not addressed by the DOT. Instead, the VE testified that he relied on his "professional expertise, literature, and discussion with other vocational experts" to determine how that limitation would affect Plaintiff's abilities in the work place (Tr. 32).

In conclusion, the ALJ's reliance on the VE's testimony, rather than the grids, was appropriate and is supported by substantial evidence.

3. Evaluation of Medical Opinions

In the conclusion portion of her brief, Plaintiff also summarily mentions that the ALJ failed to include a discussion about which evidence was found credible and why (Doc 10, p 10-11). This Court disagrees.

An ALJ's determination of the weight to be assigned to each medical opinion is generally not disturbed because "opinions as to disability are reserved for the ALJ and for the ALJ alone." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015). Unless the ALJ's assignment of weight is unsupported by substantial evidence, the Court must defer to the ALJ's determination. Hancock v. Astrue, 667 F.3d 470, 474 (4th Cir. 2012).

When evaluating medical opinions, the ALJ should consider (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. Dunn, 607 F. App'x at 267-8 (citing Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)); see also 20 C.F.R. § 404.1527(c). Citing to state medical opinions in support of an ALJ's conclusion, in itself, is not enough to constitute substantial evidence. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, the ALJ must indicate *why* the opinions merit that weight. Id. (emphasis in original). The ALJ must explain why each medical opinion merits more or less weight and not simply adopt the opinions without pointing to support in the record. Id.

Here, the ALJ included a detailed description of the weight assigned to each of the medical opinions of record. First, the ALJ stated that she assigned "great weight" to Dr. Burgess' opinion because it was supported by the evidence. Second, the ALJ assigned greater weight to Dr. Clifford Charles and Dr. William Farrell, both state psychological consultants, while assigning less weight to other state psychological consultants because their opinions were more consistent with the evidence (Tr. 30). Similarly, the ALJ gave greater weight to some state medical consultants than others for the same reason (Id.). Finally, the ALJ assigned only little weight to Dr. Clayton, even

8

though he was a treating physician, because his recorded opinion was not only contrary to the evidence as a whole, but also contradicted by other reports provided by Dr. Clayton (Tr. 27-29). Without substantial evidence to the contrary, suggesting the ALJ erred in her assignment of weight, this Court must accept the ALJ's determination as to the weight assigned to the differing opinions.

In conclusion, the ALJ provided sufficient information as to which evidence was relied on for her RFC determination and the assignment of weight as to the different opinions.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED, and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Signed: April 12, 2017

Frank D. Whitney
Chief United States District Judge